**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Dale,<br><br>          Plaintiff,<br><br>vs.<br><br>Travelers Property Casualty Insurance Company,<br><br>          Defendant. | No.  CV-22-01659-PHX-SPL<br><br>No.  CV-22-01847-PHX-SPL (cons.)<br><br>**ORDER** |

     Before the Court is the Plaintiffs' unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class. (Doc. 52). Plaintiffs Jennifer Dale and Cameron Bode (collectively, "Plaintiffs"), and Defendant Travelers Property Casualty Insurance Company ("Travelers"), have agreed to settle this matter on the terms and conditions set forth in their Settlement Agreement (Doc. 53-1).[1]

     The parties move the Court to (1) certify the class conditional for settlement; (2) appoint Plaintiffs Jennifer Dale and Cameron Bode as class representatives for the settlement class; (3) appoint Robert Carey of Hagens Berman Sobol Shapiro, LLP as class counsel; (4) preliminarily approve the proposed Settlement Agreement; and (5) direct notice to the proposed settlement class in the form and manner, and on the schedule,

---

[1] An unsigned settlement agreement was attached as Exhibit 1 to Plaintiffs' Motion (Doc. 52), while the fully executed Agreement was filed within ten days following the Motion (Doc. 53-1). Plaintiffs' counsel certified that no changes were made to the Motion or Settlement Agreement between filings. (Doc. 53 at 2).

1  proposed. (Doc. 52 at 7).

2  **I.    BACKGROUND**

3      This case relates to the Arizona Supreme Court's decision in *Franklin v. CSAA*
4  *General Insurance Co.*, 532 P.3d 1145 (2023), which held that A.R.S. § 20-259.01, a
5  provision of Arizona's Uninsured/Underinsured Motorist Act, (1) "mandates that a single
6  policy insuring multiple vehicles provides different UIM[2] coverages for each vehicle," (2)
7  that the statute "does not bar an insured from receiving UIM coverage from the policy in
8  an amount greater than the bodily injury or death liability limits of the policy," and (3) that
9  "insurers seeking to prevent insureds from stacking UIM coverages under a single, multi-
10 vehicle policy must employ subsection (H)'s sole prescribed method for limiting stacking."
11 *Franklin*, 532 P.3d at 1146–47. Under subsection (H), for an insurer to limit policy
12 stacking, they must explicitly "inform 'the insured of the insured's right to select one policy
13 or coverage,' either in the policy itself or in writing 'within thirty days after the insurer
14 receives notice of [the] accident.'" *Franklin*, 532 P.3d at 1148 (alteration in original)
15 (quoting A.R.S. § 20-259.01(H)). The present case is one of several parallel cases filed
16 around the same time as *Franklin*, all of which presented the same UM[3]/UIM policy
17 stacking question. (Doc. 52 at 8–9).

18     In late 2022, the named Plaintiffs in this case, Cameron Bode and Jennifer Dale,
19 filed separate suits against Defendant Travelers Property Casualty Insurance Company
20 related to how Travelers stacked UM and UIM coverage. (*Id.* at 10.) After *Franklin* was
21 decided, this Court consolidated the two cases at Plaintiffs' request and ordered them to
22 file a Consolidated Complaint (Doc. 37).

23     In that Complaint, Dale alleges that she was injured in a collision and suffered
24 injuries in excess of $100,000, and the non-party at fault was underinsured. (Doc. 37 at 7–
25 8). At the time of the collision, Dale was insured under a Travelers policy insuring four
26 vehicles, with UIM benefits of $100,000 per person and $300,000 per occurrence. (*Id.* at

27  ─────────────
28  [2] Underinsured motorist ("UIM")
    [3] Uninsured motorist ("UM")

9). However, Travelers denied Dale's demand for all applicable UIM coverages. (*Id.* at 10). Similarly, Bode alleges that he was injured in a collision and suffered injuries in excess of $300,000, and the non-party at fault was uninsured. (*Id.*). At the time of his accident, Bode was insured under a Travelers policy insuring two vehicles, with UM benefits of $100,000 per person and an aggregate limit of $300,000 per occurrence. (*Id.* at 11). However, after Bode submitted a claim, Travelers paid $100,000, the policy limit on only one of the two covered vehicles. (*Id.*).

Plaintiffs alleged that Travelers did not comply with A.R.S. § 20-259.01(H) because "(a) [Travelers' Policy did] not limit the UM/UIM coverage on each covered vehicle so only one policy or coverage, selected by the insured, shall be applicable to any one accident, and (b) it [did] not inform the insured of their right to select one UM/UIM coverage, as between multiple vehicles insured under the Policy, in the event of a covered accident." (Doc. 37 at 13). Plaintiffs also sought to represent and certify a class of similarly situated individuals, and they brought claims for declaratory judgment, breach of contract, and bad faith, both individually and on behalf of the class. (*Id.* at 18–24). Travelers denied all material allegations and asserted various defenses in its Answer (Doc. 38).

While conducting discovery, the parties also began mediating the case. (Doc. 52 at 13). After participating in a full day, in-person mediation on June 3, 2023, the parties agreed on key terms of a proposed settlement. (*Id.*). The parties then negotiated a final Settlement Agreement (Doc. 53-1), which is now before this Court.

## II.    LEGAL STANDARD

Class actions require the approval of the district court before settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). "Procedurally, the approval of a class action settlement takes place in two stages. In the first stage of the approval process, the Court preliminarily approves the Settlement pending a fairness hearing, temporarily certifies the Class, and authorizes notice to be given to the Class." *Sonoma Sol LLLP v.*

*Truck Ins. Exch.*, No. CV-20-00069-PHX-DJH, 2021 WL 12298811, at *2 (D. Ariz. June 16, 2021) (internal citations omitted) (cleaned up); *Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 113 (D. Ariz. 2022). Following the fairness hearing, and after entertaining objections from any proposed class members, the Court makes "a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon." *Sonoma Sol LLLP*, 2021 WL 12298811, at *2.

## III.   DISCUSSION

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). However, where parties reach settlement before a class is formally certified, "settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted). This Court must evaluate the proposed Settlement Agreement (Doc. 53-1) and ratify both (1) "the propriety of the certification" and (2) "the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

### a.   Preliminary Certification of the Settlement Class

The parties have moved the Court to conditionally certify the following Settlement Class:

> All persons insured under a Travelers policy/policies issued in Arizona during the Class Period, that provided uninsured ("UM") or underinsured ("UIM") motorist coverage for more than one motor vehicle, who either (1) received a claim payment equal to the limit of liability for the UM or UIM benefits for only one vehicle; or (2) were one of multiple claimants where the aggregate total paid on such claims was equal to the aggregate limit of liability for the UM or UIM benefits for only one vehicle.

(Doc. 52-5 at 2, ¶3).

///

///

4

### i. Rule 23(a)

Rule 23(a) of the Federal Rule of Civil Procedure lists four criteria that must be met to certify a class action: (1) numerosity; (2) commonality of law or fact; (3) typicality of the representative plaintiffs' claims; and (4) adequacy of representation. A class may only be certified if the Court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). "[T]he parties' agreement that a class exists for the purposes of settlement . . . does not relieve the Court of its duty to conduct its own inquiry." *Zwicky*, 343 F.R.D. at 114.

### 1. Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980). "A proposed class generally satisfies the numerosity requirement if the class has 40 or more members." *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 365 (D. Ariz. 2009) (collecting cases).

Here, the proposed Settlement Class is composed of 305 Members identified by the parties. (Doc. 52 at 21, 28). The proposed Settlement Class is thus so numerous that joinder of all members is impracticable, satisfying the numerosity requirement of Rule 23(a).

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This means that the Plaintiffs must "demonstrate that the class members 'have suffered the same injury,'" such that determination of the truth or falsity of a common contention (in this instance, whether Travelers provided the proposed settlement class members with the required notice under A.R.S. § 20-259.01(H),) "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (internal citation omitted).

Here, the Plaintiffs allege that the same factual allegations and causes of action

apply to each of the proposed Settlement Class Members: that (1) "all Settlement Class Members purchased a Travelers policy in Arizona that included multi-vehicle UM/UIM coverage and the same or substantially same limitation of liability policy language;" that (2) "each Settlement Class Member requested UM/UIM coverage from Travelers but only received the policy limit for one covered vehicle;" that (3) "Travelers did not provide the required notice under A.R.S. § 20-259.01(H) to the Settlement Class Members, either through the policy language or by separate written notice;" and that (4) the Plaintiffs' claims for declaratory relief, breach of contract, and bad faith "are also identical for the Settlement Class." (Doc. 52 at 22).

Commonality is easily met, because each potential claim is based on a uniform course of conduct by Travelers toward each of the proposed Settlement Class Members and would give rise to identical causes of action, as described in the previous paragraph. *See McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 250 (D. Ariz. 2022) (finding the commonality requirement satisfied where "each claim [was] based on a form contract and a uniform course of conduct towards each policyholder by [the defendant]").

### 3. Typicality

Typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that the named plaintiff have claims "reasonably coextensive with those of absent class members," but the claims do not have to be "substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. at 338. "The commonality and typicality requirements of Rule 23(a) tend to merge," because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158 n.13.

Here, the parties allege that "Plaintiffs have no individual claims that differ from the Settlement Class's claims." (Doc. 52 at 23). Both the named Plaintiffs, Jennifer Dale

and Cameron Bode, had Travelers policies "that provided UM/UIM coverage on more than one vehicle, they requested UM coverage from Travelers that exceeded the limit of UM coverage on one vehicle, they allege Travelers did not provide them the required statutory notice to prevent stacking and allow them to choose UM coverage, and Plaintiffs only received payment in the amount of the single (one-vehicle) UM limit." (*Id.*). These claims "all sound in contract, alleging that Travelers breached its contractual obligations by not paying for additional UM/UIM coverage." (*Id.*).

Because the Plaintiffs' claims are identical to those of the proposed Settlement Class, typicality is easily met.

### 4.  Adequacy of Representation

The adequacy requirement is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). In making its determination, the Court asks: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

The parties claim that there are no conflicts of interest between the named Plaintiffs, Class Counsel, and the Settlement Class. (Doc. 52 at 24). Because the named Plaintiffs have suffered a common injury to the Settlement Class and their claims are typical of the Class, they have an incentive to vigorously pursue their claims, and the Court finds no basis to believe any conflict of interest exists. *See Ellis*, 657 F.3d at 985. As to the proposed Class Counsel, the parties note that "Hagens Berman [Sobol Shapiro LLP] has extensive experience in complex and class-action litigation, including insurance litigation." (Doc. 52 at 24). Furthermore, Hagens Berman litigated *Franklin*, which led to the Arizona Supreme Court ruling interpreting A.R.S. § 20-259.01 and ultimately leading to settlement in the

instant case. (Doc. 52 at 7–12). Plaintiffs' counsel's declaration (Doc. 52-2), the attached exhibit documenting Hagens Berman's experience litigating class actions (Doc. 52-4), and proposed Class Counsel's direct involvement in the *Franklin* line of cases provides the Court with satisfaction that it is competent to vigorously prosecute this case. *See, e.g.*, *Sonoma Sol LLLP*, 2021 WL 12298811, at *4.

### ii.  Rule 23(b)

In addition to satisfying all four requirements of Rule 23(a), the Plaintiffs must show that the Proposed Class meets one of three threshold requirements under Rule 23(b). *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974). That is, Plaintiffs must show either: (1) prosecuting separate actions would create a risk of inconsistent or dispositive adjudications; (2) the opposing party's actions have applied to the class generally such that final relief respecting the whole class is appropriate; or (3) "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). Here, the parties argue this case qualifies for certification under Rule 23(b)(3). (Doc. 52 at 25).

### 1.  Predominance of Common Questions

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. 'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Hanlon*, 150 F.3d at 1022 (citation omitted).

Here, the common issues of law and fact predominate, as all of the proposed Settlement Class Members' claims arise from Travelers' alleged failure to pay the appropriate benefits the Class Members would have received had their claims been

adjusted under the stacked policy limits at the time of their losses. (*See* Doc. 52 at 15). This commonality predominates over any possible individual issues among proposed Class Members. *See, e.g.*, *Bogner v. Masari Invs., LLC*, 257 F.R.D. 529, 534 (D. Ariz. 2009). "Their legal theories are identical—the only individualized inquiry pertains to the calculation of damages." *See Brink v. First Credit Res.*, 185 F.R.D. 567, 572 (D. Ariz. 1999). Differing individual damages do not undermine predominance. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("In this circuit . . . damage calculations alone cannot defeat certification.").

The Court therefore finds that common questions of law and fact predominate, satisfying the first prong of Rule 23(b)(3).

## 2.  Superiority of Class Treatment

"The issues of predominance and superiority are intertwined. The more that common issues predominate, the more likely it is that a class action is superior." *Brink*, 185 F.R.D. at 572 (citation omitted). The superiority requirement, specifically, is designed "to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). This analysis "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. Factors to consider with respect to superiority include, but are not limited to, the following:

> (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Wolin*, 617 F.3d at 1175.

The parties argue that a class action "will reduce litigation costs and promote greater efficiency," particularly because the causes of action and facts "are basically identical."

(Doc. 52 at 28). Furthermore, the parties claim that "while the damages vary among Settlement Class Members, many of their claims are too small to make individual litigation possible." (*Id.*).

This Court agrees that, based on the similarity of the claims and the likely difficulties of managing 305 separate actions, class treatment of the claims appears to be warranted. The Court will preliminarily certify this matter as a class action.

**b. Preliminary Evaluation of Fairness of Proposed Settlement**

Having determined that class treatment appears to be warranted, the Court now decides whether to preliminarily approve the Settlement Agreement. Under Rule 23(e), the court may approve a proposed settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." In determining fairness, reasonableness, and adequacy, a court should consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In the Ninth Circuit, "examining whether a proposed settlement comports with Rule 23(e)(2) is guided by eight '*Churchill* factors'": "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (citation omitted). However, some of the eight *Churchill* factors cannot be fully assessed until the final fairness hearing. *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).

At the preliminary approval stage, the Court's task is to simply evaluate "whether the Settlement is within the range of reasonableness." *Saliba v. KS Statebank Corp.*, No. CV-20-00503-PHX-JAT, 2021 WL 2105608, at *4 (D. Ariz. May 25, 2021) (internal quotation marks and citation omitted). The Court, therefore, will simply conduct a cursory review of the terms of the parties' Settlement Agreement to ensure that it "[(1)] appears to be the product of serious, informed, non-collusive negotiations, [(2)] has no obvious deficiency, [(3)] does not improperly grant preferential treatment to class representatives or segments of the class[,] and [(4)] falls within the range of possible approval." *Horton*, 266 F.R.D. at 363. Plaintiffs have accordingly cabined their analysis of the fairness and adequacy of the proposed Settlement Agreement to these preliminary considerations. (Doc. 52 at 29–32).

### i. Non-Collusive Settlement Negotiations

The Court must first look at the means and negotiations by which the parties settled the action. *Horton*, 266 F.R.D. at 363. Courts bear the obligation to evaluate the scope and effectiveness of the investigation Plaintiffs' counsel conducted prior to reaching an agreement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 397 (C.D. Cal. 2007) ("Federal courts are inherently skeptical of pre-certification settlements, precisely because such settlements tend to be reached quickly before the plaintiffs' counsel has had the benefit of the discovery necessary to make an informed evaluation of the case and, accordingly, to strike a fair and adequate settlement."); *see also Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir.

2019) ("Where . . . parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e).") (internal quotation marks and citation omitted).

Here, the parties reached an agreement after the Arizona Supreme Court issued its ruling in *Franklin*, which limited the outstanding issues in this case to "whether Travelers provided the required notice under A.R.S. § 20-259.01(H) and, if not, whether Travelers' insureds were paid for stacked coverage, and Travelers' factual and legal defenses in this regard." (Doc. 52 at 29). Based on the *Franklin* ruling, Plaintiffs "contend they have a strong case for breach of contract by establishing that Travelers did not provide the required notice under A.R.S. § 20-259.01(H) and that Travelers did not stack coverage." (*Id.*). On the other hand, Travelers denies liability and "contends it has substantial merits and class defenses even in light of *Franklin*." (*Id.* at 29–30). However, rather than continue to litigate, "Travelers and Plaintiffs reached a settlement that benefits both sides." (*Id.* at 29).

Prior to settlement, the parties conducted some discovery, including Plaintiffs' fifty Requests for Production, fourteen Requests for Admission, and twenty-three Interrogatories to Travelers. (*Id.* at 12). In response, Travelers produced various files and policies pertinent to the named Plaintiffs' claims, as well as initial class member discovery and data for the purposes of settlement. (*Id.* at 12–13). Specifically, for persons insured by Travelers who fit the proposed Class Member definition, Travelers produced the following information: "(1) the date of loss; (2) the notice of loss date; (3) the type of coverage (UM/UIM); (4) the UM/UIM limits per person; (5) the number of vehicles on the policy; (6) the stacked coverage limit; (7) the amount paid; (8) medicals and anticipated future medicals; (9) lost wages and anticipated lost wages; (10) whether the insured signed a release; and (11) Traveler's estimated exposure." (*Id.* at 13). In anticipation of the parties' first mediation, Plaintiffs' counsel prepared a sixteen-page mediation memo explaining that they would seek compensatory and punitive damages if the case went to trial. (*Id.*).

The parties ultimately settled on a common fund of $14,970,000.00, less any

reduction for exclusions, to release Travelers from the claims at issue. (*Id.* at 14). The parties attest that "Class Counsel have developed extensive statistical evidence and other proof confirming that this settlement amount is fair, reasonable, and adequate in relation to the projected value of the insurance claims themselves," and that "Class Counsel will submit more detailed proof during the final approval process, but the projected final assessment of the value of the UM/UIM insurance benefits owed to the class is no less than $9.3 million." (*Id.*).

As there is no evidence to suggest that the settlement was negotiated in haste or collusion, the Court is preliminarily satisfied that the Settlement Agreement was the product of serious, informed negotiations. *See Hanlon*, 150 F.3d at 1027 (affirming approval of settlement when there was "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims"). However, at the fairness hearing, the parties should be prepared to present evidence regarding the adequacy of the settlement negotiation process, including Class Counsel's aforementioned statistical evidence regarding the projected value of insurance benefits alleged to be owed to the Class.

### ii.  No Obvious Deficiencies

The Ninth Circuit has identified three particular warning signs "that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations": (1) "When counsel receive a disproportionate distribution of the settlement," (2) "clear sailing" arrangements that provide for the payment of attorneys' fees separate from class funds, and (3) when unawarded fees revert to defendants rather than the class fund. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

As to the first warning sign, the parties attest that "the Settlement Class will receive a majority of the Settlement Fund." (Doc. 52 at 31). According to the parties' statistical estimations, of which they should be prepared to present further evidence at the fairness hearing, each proposed Settlement Class Member is expected to receive "approximately

160.9% of the benefits they would have received had their claims been adjusted under the stacked policy limits at the time of their losses, instead of being capped by the single limit." (*Id.* at 15). As for the attorneys' award, Class Counsel advises this Court that it "will request a fee award of up to 30% of the total Settlement Fund." (*Id.* at 16). This Court is prepared to more thoroughly evaluate the proposed fee award when counsel makes its motion for attorneys' fees, but at present, the Court is satisfied that the potential award amount does not raise any "urgent red flag demanding more attention and scrutiny." *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021).

The second warning sign, "clear sailing" arrangements, are present in cases where a defendant promises not to challenge the agreed-upon fees for class counsel. *Briseño*, 998 F.3d at 1026. Such provisions may "signal[] the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." *Id.* at 1027. In the instant case, the proposed Settlement Agreement provides that "Class Counsel will apply for a reasonable award of attorney's fees and expenses/costs . . . to be drawn exclusively from the Settlement Fund" and to be approved by this Court. (Doc. 53-1 at 11). Therefore, the proposed Settlement Agreement contains no troubling "clear sailing" agreement.

Finally, as to potentially unawarded fees, the parties argue that (1) it is unlikely that any Class Member would not claim his or her funds, given the relatively small number of proposed Settlement Class Members and the size of their potential recoveries, and (2) if any such funds are unclaimed, "Travelers may elect to have those funds returned and treat that Class Member as an opt out, which would not bind him or her to the Settlement." (Doc. 52 at 31). Under the specific terms of the proposed Settlement Agreement,

> Following distribution of the Net Settlement Fund as set forth above, if payments to Class Members remain uncashed or unclaimed after 180 days (or such other later date if the Court so orders), at Defendant's election the funds attributable to those individuals shall be either: (1) be returned to Defendant, with the Settlement Class Member treated as an opt out (except that any such exclusion will not be considered an exclusion for the purposes of the termination provision in Paragraph 53 below); or (2) be reallocated within the Settlement Fund to be

14

applied toward costs of the Administrator.

(Doc. 53-1, at 7).

Generally speaking, courts do not "have a duty to maximize the settlement fund for class members." *Briseño*, 998 F.3d at 1027. However, the presence of a "kicker" or "reverter" clause, where a defendant, rather than class members, receives any unawarded funds, "makes it less likely that the settlement can be approved if the district court determines the clear sailing provision authorizes unreasonably high attorneys' fees." *In re Bluetooth*, 654 F.3d at 949. Here, the Court is satisfied that the proposed Settlement Agreement contains no clear sailing provision, and the parties do not intend to seek unreasonably high attorneys' fees, which renders this section of the Settlement Agreement less troublesome. However, at the fairness hearing, the parties should be prepared to answer questions about (1) whether, and under what circumstances, Defendant Travelers intends to treat unawarded funds as an opt out or reallocate them within the Settlement Fund to be applied toward costs of the Administrator; and (2) how the proposed Settlement Class Members' recovery may change if the Court decides to award attorneys' fees of greater or less than 30%.

### iii.  No Preferential Treatment

The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel has allowed the "pursuit of their own self-interests and that of certain class members to infect negotiations." *In re Bluetooth.*, 654 F.3d at 947. For that reason, preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. These service awards "are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th

Cir. 2009) (internal citations omitted). The Court, however, must "evaluate their awards individually," *Staton*, 327 F.3d at 977, to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion." *Id*. at 975. To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.* at 977.

Here, the parties claim that "Plaintiffs will request an incentive fee of $10,000 each" to be paid "separately by Travelers based on what the Court awards." (Doc. 52 at 31). The parties' proposed Notice of Class Action Settlement attests to the same. (Doc. 52-3 at 7). However, the Court notes that the parties' fully executed Settlement Agreement provides for an incentive fee of $15,000 for each proposed Class Representative, not to exceed $30,000. (Doc. 53-1 at 4). At the fairness hearing, the parties should be prepared to clarify whether they intend to seek an incentive fee of $10,000 or $15,000 for each of the two proposed Class Representatives.

However, presuming that parties will request a fee of $15,000 for each Class Representative, this is a reasonable award under Ninth Circuit law. According to counsel, the named Plaintiffs both assisted with drafting their factual allegations in their complaints, were involved throughout the litigation and in the settlement process, and sacrificed the opportunity for quick individual recovery "to ensure the entire Class was compensated." (Doc. 52-2 at 5–6). $15,000 represents less than 0.1% of the total proposed Settlement Fund, and because it is paid separately by Defendants, does not reduce the amount that any proposed Settlement Class Member will receive. (Doc. 52 at 17–18). This amount is therefore in accordance with Ninth Circuit case law. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (approving $45,000 in incentives awards, which made up "a mere .17% of the total settlement fund of $27,250,000").

The parties also argue that there is not any preferential treatment for segments of the Settlement Class, as each proposed Class Member's potential award is "based entirely on what their actual damages were, the amount of available UM/UIM coverage they had,

16

and whether they have a statute of limitations issue or signed a release." (Doc. 52 at 31). While the parties should be prepared to present further evidence to this effect at the fairness hearing, the Court finds that the Proposed Settlement Agreement does not appear to improperly grant preferential treatment to named Plaintiffs or segments of the class.

### iv.  Within Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," courts focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1079–80.

According to the parties' motion, "the projected final assessment of the value of the UM/UIM insurance benefits owed to the class is no less than $9.3 million," (Doc. 52-2 at 5), while the proposed Settlement Fund is for "$14,970,000.00, less any reduction for exclusions," (Doc. 52 at 14). Although Class Counsel asserts that they "worked with experts who estimated counterfactual settlement payments using statistical techniques such as Kaplan–Meier curve analysis and maximum likelihood estimation of censored claim data," (Doc. 52 at 14), the parties should be prepared to present more concrete evidence of these calculations at the fairness hearing to allow the Court to more fully understand how they arrived at the $14,970,000 settlement amount and how Defendant Travelers estimated its exposure from all proposed Class Members' claims. *See, e.g.*, *Zwicky*, 343 F.R.D. at 124–25 (noting that the court needed more than "vague and conclusory statements" about numerical evidence to determine whether a proposed settlement fund amount was adequately justified). At this stage, however, the Court preliminarily approves the amount of the Settlement Fund.

In sum, the Court will preliminarily approve the proposed Settlement Agreement because it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Horton*, 266 F.R.D. at 363 (citation omitted).

### c.  Proposed Class Notice and Administration

The Court finally turns to the Notice of Class Action Settlement that the parties intend to distribute to the proposed Settlement Class. Rule 23(c)(2)(B) governs the requirements for notices in Rule 23(b)(3) class actions:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The notice may be distributed by "United States mail, electronic means, or other appropriate means." *Id.* In addition, due process requires the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed Settlement Agreement (Doc. 53-1) details a notice plan and includes a proposed Notice of Class Action Settlement (Doc. 52-3). The Settlement Agreement provides for notice by United States Mail and identifies a procedure for obtaining last known contact information of Class Members from Defendant Travelers. (Doc. 52-1 at 8). The proposed Notice of Class Action Settlement (Doc. 52-3) is in the form of easily understandable questions and answers concerning the proposed Settlement Agreement and the litigation, and it further directs Class Members to contact Class Counsel or visit the

settlement website for more detailed information. It informs Class Members that they "do not need to do anything to receive a payment." (Doc. 52-3 at 4). The proposed Notice of Class Action Settlement meets the requirements of Rule 23(c)(2)(B) because it describes the nature of the action, defines the Settlement Class, states the issues, tells Class Members how to appear at the fairness hearing, explains the exclusion process, provides a deadline for exclusion, and explains the binding effect of a class judgment. It also meets due process requirements because it explains to the Settlement Class their rights to opt out of or object to the proposed Settlement, and the deadlines by which to exercise those rights.

This Court therefore approves the parties' notice plan and proposed Notice of Class Action Settlement as the best notice practicable under the circumstances.

## IV. CONCLUSION

The Court preliminarily finds that the proposed Settlement Class meets the requisite certification standards under Federal Rule of Civil Procedure 23 and grants conditional certification of the proposed Class for settlement purposes. The Court preliminarily approves the proposed Settlement Agreement as sufficiently fair, reasonable, and adequate to allow the dissemination of notice of the proposed settlement to the Settlement Class Members.

Having considered in detail the parties' Motion for Preliminary Approval of Class Action Settlement (Doc. 52), including the fully executed Settlement Agreement (Doc. 53-1) and the proposed Notice of Class Action Settlement (Doc. 52-3), and good cause appearing,

**IT IS ORDERED** that the Motion for Preliminary Approval (Doc. 52) is **granted**.

**IT IS FURTHER ORDERED** as follows:

1.     The Court does hereby preliminarily approve the parties' Settlement Agreement and the Settlement set forth therein as fair, adequate and reasonable, and in the best interest of the putative class members, subject to further consideration at a final fairness hearing (the "Final Fairness Hearing").

2.     The Court certifies the following Class for the purposes of settlement only

("the Settlement Class"): All persons insured under a Travelers policy/policies issued in Arizona during the Class Period,[4] that provided uninsured ("UM") or underinsured ("UIM") motorist coverage for more than one motor vehicle, who either (1) received a claim payment equal to the limit of liability for the UM or UIM benefits for only one vehicle; or (2) were one of multiple claimants where the aggregate total paid on such claims was equal to the aggregate limit of liability for the UM or UIM benefits for only one vehicle.

3.     The Court designates Plaintiffs Jennifer Dale and Cameron Bode as Class Representatives for the Settlement Class.

4.     The Court appoints Robert Carey of Hagens Berman Sobol Shapiro LLP as Class Counsel for the Settlement Class.

5.     This Order incorporates by reference the definitions in the Settlement Agreement as though fully set forth herein, and all capitalized terms used herein shall have the same meaning as set forth in the Settlement Agreement.

6.     The Court approves the proposed Notice (Doc. 52-3), so long as the parties carry out the following revision: correcting the amount of the service award on page 6 (Doc. 52-3 at 7) (which currently reads, "That service award will not exceed $10,000 for each Class Representative, or no more than $20,000.") to "That service award will not exceed $15,000 for each Class Representative, or no more than $30,000," in accordance with the terms of the Settlement Agreement.

7.     The Court further finds that the content of the Notice and the proposed plan of notice, which includes direct mailed notice to the Class Members as well as email notice, where email addresses are available, meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons entitled to the notice. The Court finds that the Notice is clearly designed to advise the Class Members of their

---

[4] The "Class Period" means September 21, 2016, through the date of preliminary approval as granted by this Order. (Doc. 53-1 at 3).

rights.

8.      The Court will hold a Final Fairness Hearing on **April 2, 2025 at 9:30 a.m.** (Arizona time) before District Judge Steven P. Logan in Courtroom 501, Sandra Day O'Connor Federal Courthouse, 401 West Washington Street, Phoenix, Arizona 85003, to determine whether to approve certification of the class for settlement purposes; whether the proposed terms and conditions in the Settlement Agreement are fair, reasonable, and adequate; whether a final judgment should be entered; whether the proposed plan of distribution should be approved; the amount of fees and expenses that should be awarded to Class Counsel; and the amount of the service award that should be provided to the Class Representative.

9.      The Court appoints the firm of Epiq Class Action & Claims Solutions, Inc., as the Settlement Administrator. Plaintiffs and their designees, including the Settlement Administrator, are authorized to expend funds from the escrow accounts to pay taxes, tax expenses, notice, and administration costs as set forth in the Settlement Agreement. The Court appoints the Settlement Administrator to supervise and administer the notice procedure, as more fully set forth below.

10.      Following the Settlement Administrator's receipt of final and approved Settlement Class member contact data, and no later than **75 days** after entry of this Order, the Settlement Administrator shall begin issuing direct notice by first class U.S. mail to all Settlement Class members for whom there is a valid mailing address, or whose mailing addresses can be identified with reasonable effort, or alternatively by email, if mailing addresses are not available, substantially in the form attached as Exhibit 3 to the Settlement Agreement.

11.      All proposed Class Members who do not request exclusion from the Settlement shall be bound by all determinations and judgments in the litigation concerning the settlement, whether favorable or unfavorable to the Settlement Class.

12.      All reasonable expenses incurred in identifying and notifying members of the Settlement Class, as well as administering the Settlement Fund, shall be paid for as set

forth in the Settlement Agreement.

13.     Class Counsel shall file their motion for attorneys' fees, costs, and service award for Class Representatives, and all supporting documentation and papers, no later than **30 days** after the Notice Date.

14.     Any person who desires to request exclusion from the Settlement Class shall submit a request for exclusion to the Settlement Administrator. To be excluded from the Settlement, the exclusion request must be received by the Settlement Administrator no later than **60 days** after the Notice Date. Any request for exclusion must include:

    a.  The Class Member's full name, address, telephone number, and email address and, if represented by an attorney, the attorney's full name, address, telephone number, and email address;

    b.  The name and number of the case: *Jennifer Dale, et. al v. Travelers Property Casualty Insurance Company*, Case No. CV-22-01659-PHX-SPL;

    c.  A clear statement indicating that the proposed Class Member wishes to be excluded from the final Settlement Class; and

    d.  The Class Member's signature and date.

All persons who submit valid and timely requests for exclusion shall have no rights under the Settlement Agreement, shall not share in the distribution of the settlement funds, and shall not be bound by the final judgment relating to the Defendant entered in the litigation.

15.     Any member of the Settlement Class who has not requested to be excluded may enter an appearance in the litigation, at his or her own expense, individually or through counsel of his or her own choice. If the member does not enter an appearance, he or she will be represented by Class Counsel.

16.     Any member of the Settlement Class who has not requested to be excluded may appear, object, and show cause, if he or she has any reason, why the proposed settlement should or should not be approved as fair, reasonable, and adequate; why a judgment should or should not be entered thereon; why the plan of distribution should or should not be approved; why attorneys' fees and expenses should or should not be awarded

to Class Counsel; or why the service award should or should not be awarded to Class Representatives. All such written objections and supporting papers must be mailed or filed with the Court within **60 days** of the Notice Date, with a copy to the Settlement Administrator, and include:

    a.  The objector's full name, address, telephone number, and email address;

    b.  The name and number of the case: *Jennifer Dale, et. al v. Travelers Property Casualty Insurance Company*, Case No. CV-22-01659-PHX-SPL;

    c.  A statement of the objection(s), as well as the specific reasons for each objection, including any legal authority the individual wishes to bring to the Court's attention; and

    d.  If the Class Member is represented by counsel, the name, address, and phone number of the Class Member's counsel.

If the Settlement Class Member plans to attend the Final Fairness Hearing, he or she must provide a Notice of Intent to Appear. In addition to the above elements required for any objection, the Notice of Intent to Appear must include:

    a.  A list of any witnesses he or she may call to testify at the hearing;

    b.  Copies of any documents he or she may use as evidence in support of his or her objection; and

    c.  A list of any prior class action cases in which he or she has filed an objection.

All objections must be submitted to the Court either by mailing them to the Clerk of the Court, United States District Court for the District of Arizona, with a copy mailed to Class Counsel at the address listed below, or by filing them at any location of the United States District Court for the District of Arizona. All objections must be either filed or received (not post-marked) on or before **60 days** after the Notice Date.

    **Court:**
    Clerk of the Court
    United States District Court for the District of Arizona
    401 W. Washington Street
    Phoenix, AZ 85003

23

1

**Class Counsel:**

2

Robert B. Carey

3

HAGENS BERMAN SOBOL SHAPIRO LLP
11 W. Jefferson Street, Suite 1000

4

Phoenix, AZ 85003

5

17.     All papers in support of the settlement and responses by Class Counsel to

6

any objections must be filed within **75 days** of the Notice Date.

7

18.     Upon a showing of good cause, the Court may extend any of the deadlines

8

set forth in this Order without further notice to the Settlement Class.

9

19.     Upon the entry of this Order, all members of the Settlement Class who have

10

not requested to be excluded are provisionally barred and enjoined from instituting or

11

continuing the prosecution of any action asserting the claims released in the Settlement

12

Agreement before the Court's decision as to whether to grant final approval of the

13

Settlement.

14

20.     The Court hereby sets the following schedule of events:

15

1)   The deadline to provide Settlement Class data to the

16

Settlement Administrator (Epiq) is **45 days** from the entry

17

of this Order.

18

2)   The deadline to mail Notice to all Settlement Class

19

Members ("Notice Date") is **75 days** from the entry of this

20

Order.

21

3)   The deadline for filing a motion for attorneys' fees and

22

costs is **30 days** after the Notice Date.

23

4)   The deadline for Class Members to object to the Settlement

24

is **60 days** after the Notice Date.

25

5)   The deadline for Class Members to request exclusion from

26

the Settlement is **60 days** after the Notice Date.

27

6)   The deadline for Class Counsel to file the motion for final

28

approval of the Settlement and respond to objections is **75 days** after the Notice Date.

7) The Final Fairness Hearing is set for **April 2, 2025 at 9:30 a.m.** (Arizona time) before District Judge Steven P. Logan in Courtroom 501, Sandra Day O'Connor Federal Courthouse, 401 West Washington Street, Phoenix, Arizona 85003.

Dated this 15th day of October, 2024.

Honorable Steven P. Logan
United States District Judge