**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Dale, | No. CV-22-01659-PHX-SPL |
| Plaintiff, | No. CV-22-01847-PHX-SPL (cons.) |
| vs. | |
| | **ORDER** |
| Travelers Property Casualty Insurance Company, | |
| Defendant. | |

Before the Court is Plaintiffs' Motion for Final Approval of Class Action Settlement (Doc. 60), Motion for Attorneys' Fees, Expenses, and Service Award (Doc. 59), and Supplement to Plaintiffs' Motion for Attorneys' Fees (Doc. 64). The Court previously entered an Order preliminarily approving the Settlement Agreement and conditionally certifying the class. (Doc. 55). The Court conducted a Final Fairness Hearing on April 2, 2025 (ME 61), and it will now grant the Final Approval Motion.

**I.     BACKGROUND**

In late 2022, the named Plaintiffs in this case, Cameron Bode and Jennifer Dale, filed separate suits against Defendant Travelers Property Casualty Insurance Company related to how Travelers stacked uninsured motorist ("UM") and underinsured motorist ("UIM") coverage. (Doc. 52 at 10). Both named Plaintiffs were injured in collisions that occurred while they were insured under a Travelers policy, and the non-parties at fault in both cases were either uninsured or underinsured. (Doc. 55 at 2–3). In both instances, Travelers limited coverage based on its interpretation of the policy stacking provisions of

A.R.S. § 20-259.01.

Numerous parallel cases were filed in the District of Arizona around this time, all presenting the same policy stacking questions under A.R.S. § 20-259.01. (Doc. 52 at 8–9). Two questions were certified to the Arizona Supreme Court, which ultimately ruled that "§ 20-259.01 mandates that a single policy insuring multiple vehicles provides different UIM coverages for each vehicle," and that "§ 20-259.01(B), by its plain language and non-stacking function, does not bar an insured from receiving UIM coverage from the policy in an amount greater than the bodily injury or death liability limits of the policy." *Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1146–47 (2023).

After *Franklin* was decided, this Court consolidated the *Bode* and *Dale* actions at Plaintiffs' request and ordered the Plaintiffs to file a consolidated complaint. (Doc. 52 at 11). In their Complaint, Plaintiffs alleged that Travelers did not comply with A.R.S. § 20-259.01(H) because "(a) [Travelers' Policy did] not limit the UM/UIM coverage on each covered vehicle so only one policy or coverage, selected by the insured, shall be applicable to any one accident, and (b) it [did] not inform the insured of their right to select one UM/UIM coverage, as between multiple vehicles insured under the Policy, in the event of a covered accident." (Doc. 37 at 13). Plaintiffs also sought to represent and certify a class of similarly situated individuals, and they brought claims for declaratory judgment, breach of contract, and bad faith, both individually and on behalf of the class. (*Id.* at 18–24).

After participating in mediation, the parties negotiated a Settlement Agreement, which was submitted for this Court's approval pursuant to Federal Rule of Civil Procedure ("Rule") 23(e). (Doc. 52). On October 16, 2024, this Court (1) granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; (2) conditionally certified the Rule 23 Settlement Class; (3) appointed Plaintiffs Jennifer Dale and Cameron Bode as Class Representatives; (4) appointed Robert Carey of Hagens Berman Sobol Shapiro LLP as Class Counsel; (5) appointed Epiq Class Action & Claims Solutions, Inc., as the Settlement Administrator; (6) approved the proposed form and plan of Notice to the Settlement Class; and (7) set a schedule of events to culminate in a Final Fairness Hearing. (Doc. 55 at 19–

25).

The Court preliminarily approved the following Class for purposes of settlement: "All persons insured under a Travelers policy/policies issued in Arizona during the Class Period, that provided uninsured ("UM") or underinsured ("UIM") motorist coverage for more than one motor vehicle, who either (1) received a claim payment equal to the limit of liability for the UM or UIM benefits for only one vehicle; or (2) were one of multiple claimants where the aggregate total paid on such claims was equal to the aggregate limit of liability for the UM or UIM benefits for only one vehicle." (*Id.* at 20).

The Final Fairness Hearing took place on April 2, 2025. (ME 61). Counsel for both parties reiterated their approval of the Settlement Agreement and responded to the Court's questions, and one Class Member spoke to the Court in support of the Settlement. (*Id.*). The Court has read and considered the Settlement Agreement, the Motion for Final Approval of Class Action Settlement (Doc. 60), the Motion for Attorneys' Fees, Expenses, and Service Award (Doc. 59), the supplemental billing statement (Doc. 64), and the record as a whole, and it now makes the following findings.

## II.    DISCUSSION

The parties' Settlement Agreement states that Defendant shall pay a common fund of $14,970,000.00, less reductions for the costs of notice, attorneys' fees, and expenses, in exchange for the release of all asserted claims. (Doc. 52 at 14–15). Pursuant to this Court's Order Granting Preliminary Approval (Doc. 55), Plaintiffs sent notice of settlement to each prospective class member, which resulted in 100% of the 303 Class Members receiving direct notice by mail, *no* Class Members filing an opposition to the Settlement, and *no* Class Members opting out. (Doc. 60 at 2–3).

In the Motion for Final Approval (Doc. 60) and Motion for Attorney Fees (Doc. 59), Plaintiffs now request that (1) the Court approve the plan for Defendant to pay Settlement Class Members as set forth in the Preliminary Approval Motion (Doc. 52); (2) the Court award attorneys' fees of $4,491,000.00 to Class Counsel, which represents 30% of the monetary benefits conferred upon the Class (Doc. 59 at 7); (3) the Court award $48,667.67

3

to Class Counsel in costs and expenses (*id.* at 7–8)[1]; (4) the Court approve the payment of the Settlement Administrator's reasonable and necessary administrative costs, which currently total $20,500, with an additional estimated $204,900 to be spent on resolving any Medicare liens (Doc. 60 at 3); and (5) the Court award Class Representatives Jennifer Dale and Cameron Bode $10,000 each as a Service Award (Doc. 59 at 8).

### A. Final Approval Motion

After holding a final fairness hearing in accordance with Rule 23(e)(2),"the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "[A] district court may approve a class action settlement only after finding that the settlement is 'fair, reasonable, and adequate.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120–21 (9th Cir. 2020) (quoting Fed. R. Civ. P. 23(e)(2)). The Court reviews several factors when considering the reasonableness of a settlement agreement. Such factors include: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The Court may consider "some or all of these factors." *Campbell*, 951 F.3d at 1121.

Here, the Court finds that the *Churchill* factors support final approval of the Settlement Agreement. Plaintiffs addressed, and the Court considered, the first six factors in its Order granting preliminary approval. (*See* Docs. 52, 55). Plaintiffs argue that the final

---

[1] Although Class Counsel requests only $48,667.67 in their Motion for Attorneys' Fees, their updated supplemental briefing (Doc. 64) reveals updated actual expenses totaling $51,170.20. (Doc. 64 at 2). Accordingly, this Court will grant expenses in the amount of $51,170.20, as discussed below.

4

two factors also weigh toward approval, as there is no governmental participant in this case (Doc. 60 at 4), and no Class Member has opted out or filed an objection (*id.*). *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

This Court previously found that Class Counsel and the Class Representatives could adequately represent the class (Doc. 55 at 7–8); that the Settlement Agreement was negotiated at arm's length without any evidence of collusion (*id.* at 12–13); that class treatment was appropriate given the costs and risks of trial (*id.* at 9–10); that the proposed method of notice to Class Members was reasonably calculated to satisfy due process (*id.* at 18–19); and that the Settlement Agreement treats class members equitably relative to each other (*id.* at 15–17). *See* Fed. R. Civ. P. 23(e)(2)(A–D). With the Motion for Final Approval of the Settlement Agreement, Plaintiffs provided a declaration from the Settlement Administrator describing the dissemination of Class Notice by postal mail, which resulted in a 100% deliverable rate to 100% of the 303-member Class (Doc. 60-1 at 6); as well as a declaration demonstrating that all notices required by the Class Action Fairness Act of 2005 have been sent (*id.* at 11–12).

Accordingly, this Court is of the opinion that the Settlement Agreement is a fair, reasonable, and adequate resolution of the claims against Defendant.

### B. Attorneys' Fees Motion

"When a settlement results in a common fund, courts in this Circuit have discretion to employ either a percentage-of-recovery method or the traditional lodestar method to determine attorney's fees." *In Re Snap Inc. Sec. Litig.*, No. 2:17-CV-03679-SVW, 2021 WL 667590, at *2 (C.D. Cal. Feb. 18, 2021). In the Motion for Attorneys' Fees (Doc. 59), Plaintiffs request that this Court apply the percentage-of-recovery method and award attorneys' fees in the amount of 30% of the monetary benefits conferred upon the Class, or $4,491,000. (Doc. 59 at 7). The Ninth Circuit "benchmark" award is 25% of the recovery obtained. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "The

benchmark is 'presumptively reasonable,' and it should only be adjusted upward or downward for 'unusual circumstances.'" *In Re Snap*, 2021 WL 667590, at *3 (internal citations omitted). Here, Plaintiffs' counsel request a 5% increase "in light of the exceptional relief achieved on behalf of the class (160.9% of the estimated damages), the high degree of risk born by Class Counsel, the significant efforts expended by Class Counsel . . . , and the prevailing and widely known rate for contingency fees in the in the contingency insurance litigation context (30%-40%)." (Doc. 59 at 14).

While Plaintiffs argue that recovery of $14.97 million for the class is an "exceptional" result, that figure does not take into account that the attorneys' fees, costs, and service awards will all directly reduce Class Members' ultimate recovery. (Doc. 49 at 17). They argue that "[e]ven after paying Class Counsel 30% of the settlement fund, paying for costs, and paying an incentive award, the Class will receive over $10.42 million—split among 305 Class Members—a solid, and arguably more than full recovery, as measured against the estimated benefits due to them." (*Id.* at 18).

In assessing a request for attorneys' fees under the percentage-of-recovery method, courts in the Ninth Circuit evaluate factors including (1) exceptional results achieved for the class, (2) risk to class counsel, (3) benefits beyond the cash settlement fund, (4) the market rate for the relevant field of law, (5) the burdens to class counsel while litigating the case, and (6) whether the case was handled on a contingency basis. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015). Class Counsel argue that each of these six factors support their 30% fee request (*see* Doc. 59 at 17–24), and the Court has carefully considered these arguments in light of the circumstances of this case. *See Vizcaino*, 290 F.3d at 1048 ("Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case.").

While the Court agrees that Class Counsel obtained excellent results for the Class Members, it is less persuaded by their argument that the work done by Class Counsel in other related actions should furnish this Court with additional reason to grant their 30% fee request. (Doc. 59 at 25–26). On the contrary, the fact that Class Counsel will likely have

the opportunity to obtain attorneys' fees in numerous related matters in addition to this matter may very well undercut their position that the fees should be increased here. Furthermore, while Class Counsel emphasize the statistic that Class Members are receiving approximately 160.9% of estimated damages, arguing that this is an "extraordinary" recovery, this Court notes that after all relevant fees and expenses are subtracted from the common fund, the remaining award to Class Members will represent a lower percentage of recovery, rendering the 160.9% statistic slightly misleading as a practical matter. (*Id.* at 14).

Courts often cross-check the percentage-of-recovery figure against a lodestar calculation. *Id.* Based on a general approximation of the hours required to finish this case, Class Counsel estimated that their requested 30% fee award "represents a maximum [lodestar] multiplier of 4.33" on an estimated lodestar amount of $1,037,068.50. (Doc. 59-2 at 5). After the Final Fairness Hearing, this Court ordered Class Counsel to submit itemized billing pursuant to Local Rule of Civil Procedure ("LRCiv") 54.2(e). (Doc. 62). The supplemental briefing submitted by Class Counsel revealed that the actual lodestar fees incurred totaled $762,328.50, and costs incurred totaled $51,170.20. (Doc. 64 at 2). The actual lodestar amount is lower than the million-dollar figure Class Counsel approximated in their Motion for Attorneys' Fees. Using Class Counsel's actual lodestar figure (even without accounting for the fact that if this Court were performing a typical lodestar analysis, that figure might be reduced), a 30% fee award would represent a 5.89 lodestar multiplier.[2] This is higher than any of the multipliers cited by Class Counsel in their own briefing. (*See* Doc. 59 at 26 (citing multipliers generally ranging from 3–4 and up to 4.8 in the highest instance)).

Given that the Ninth Circuit's 25% benchmark is presumptively reasonable, that

---

[2] The total settlement amount, $14,970,000, multiplied by 30% (0.3) equals Class Counsels' requested fee award of $4,491,000. Dividing $4,491,000 by the actual lodestar of $762,328.50 yields a multiplier of 5.89.

Class Counsel's requested fees would represent an unusually high 5.88 multiplier, and having carefully considered each of the relevant Ninth Circuit factors, this Court concludes that, while Class Counsel has obtained successful results for the Class, they have not demonstrated such unusual circumstances that an increase to a 30% award is justified. Accordingly, Class Counsel will be awarded attorneys' fees in the amount of 25% of the settlement amount, or $3,742,500.[3]

Class Counsel will also be reimbursed for their reasonable expenses totaling $51,170.20. (Doc. 64 at 2; Doc. 59-2 at 9–10 (table of expenses)). *See, e.g.*, *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("[T]he costs and expenses incurred by counsel are subject to a test of relevance and reasonableness in amount. The taxation of costs lies within the trial court's discretion."). The $10,000 Service Award to each named Plaintiff is also reasonable and should be granted for the reasons discussed in the Preliminary Approval Order. (Doc. 55 at 16). The Service Award will be paid separately by Defendant, not out of the Settlement Fund, pursuant to the terms of the Settlement Agreement. (Doc. 53-1 at 11–12). This Court will also grant the payment of the Settlement Administrator's reasonable and necessary administrative costs, which currently total $20,500, including the costs required to settle Class Members' outstanding Medicare liens (currently estimated to total $204,900), and shall time final payment off the resolution of those liens. (Doc. 60 at 3–5).

### III. CONCLUSION

For the foregoing reasons, the Motion for Final Approval of Class Action Settlement (Doc. 60) and the Motion for Attorneys' Fees, Expenses, and Service Award (Doc. 59)

---

[3] This amount represents a more reasonable, albeit still high, multiplier of 4.91. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 n.6 (noting that most common fund cases applying the lodestar method award multiples ranging from 1 to 4); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005), *as amended* (Feb. 25, 2005) ("The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award.").

shall be granted. The Court declines to retain jurisdiction over this matter. *See In re Snap*, 2021 WL 667590, at *4.

Accordingly,

**IT IS ORDERED** that the Motion for Final Approval of Class Action Settlement (Doc. 60) and the Motion for Attorneys' Fees, Expenses, and Service Award (Doc. 59) are **granted as follows**:

1. The Court has jurisdiction over the subject matter of this litigation and all parties to the Settlement Agreement.

2. For purposes of this Order, the Court incorporates the definitions contained within the Settlement Agreement (Doc. 53-1).

3. The Court approves and confirms the settlement as set forth in the Settlement Agreement, and it finds that the settlement is fair, reasonable, and adequate under Federal Rule of Civil Procedure 23. Specifically, the Court finds that the settlement was negotiated at arm's length; that the relief provided for the class and the proposed Plan of Allocation are fair and adequate; and that the settlement treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(B–D).

4. The Court approves the following Settlement Class it conditionally certified in its Preliminary Order:

   All persons insured under a Travelers policy/policies issued in Arizona during the Class Period, that provided uninsured ("UM") or underinsured ("UIM") motorist coverage for more than one motor vehicle, who either (1) received a claim payment equal to the limit of liability for the UM or UIM benefits for only one vehicle; or (2) were one of multiple claimants where the aggregate total paid on such claims was equal to the aggregate limit of liability for the UM or UIM benefits for only one vehicle.

   (Doc. 55 at 19–20). The Class Period means September 21, 2016, through October 16, 2024. (*Id.* at 20 n.4).

5. In connection with the class certification ruling, the Court specifically finds:

9

a. The Settlement Class is so numerous that joinder of all members is impracticable;

b. Questions of law and fact are common to all Settlement Class Members;

c. The Class Representatives' claims are typical of those of the Settlement Class;

d. The Class Representatives and Class Counsel have fairly and adequately represented and protected the interests of the Settlement Class;

e. Questions of law or fact common to the Class Members predominate over any questions affecting only individual members; and

f. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(a)(1–4); 23(b)(3).

6. The Court previously appointed Hagens Berman Sobol Shapiro, LLP as Class Counsel, and the named Plaintiffs, Jennifer Dale and Cameron Bode, as the Class Representatives on behalf of the Certified Class. The Court finds that Class Counsel has met the standard for appointment under Rule 23(g).

7. Based on the Court's review of the evidence submitted and the arguments of counsel at the Final Fairness Hearing, the Court finds that Plaintiffs' notice of the Class Settlement to the Certified Class was the best notice practicable under the circumstances, that it satisfied due process, that it provided adequate information to the Certified Class regarding the Class Settlement, and that it fully satisfied the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and (e)(1). The Court also finds that the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, have been satisfied.

8. No Class Member has requested exclusion from the Certified Class, and no objections were filed regarding the Class Settlement. Accordingly, all members of the Settlement Class are bound by this Final Approval Order.

9. Plaintiffs are awarded **$3,742,500 in attorneys' fees**, which represents 25%

of the common fund, and **$51,170.20 in expenses**.

10. Class Representatives Jennifer Dale and Cameron Bode are awarded **$10,000 each** as a Service Award to be paid separately by Defendant apart from the Settlement Fund.

11. The Court approves the payment of all the Settlement Administrator's reasonable and necessary administrative costs, as well as the costs required to resolve any Medicare liens.

12. The Court orders Plaintiffs, through their Settlement Administrator, to make all final disbursements of the Net Settlement Fund to the Class no later than thirty days after the resolution of all Medicare liens.

13. Pursuant to Federal Rule of Civil Procedure 54(b), the Clerk of Court shall enter final judgment in accordance with this Order and **dismiss this action with prejudice**.

Dated this 10th day of April, 2025.

Honorable Steven P. Logan
United States District Judge